# **EXHIBIT 1**

Kathleen Koch v. Vantage Specialty Chemicals, Inc.; et al.
Proceedings had on 7/17/2024

Page 1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

KATHLEEN KOCH,                  )
                                )
           Plaintiff,           )
     v.                         ) No. 2023 L 686
                                )
VANTAGE SPECIALTY               ) All Consolidated
CHEMICALS, INC.; et al.,        ) Cases
                                )
           Defendants.          )

      Report of proceedings had at the hearing in the above-entitled cause before the HONORABLE JOHN H. EHRLICH, Judge of said Court, at Richard J. Daley Center, 50 West Washington Street, Room 2306, Chicago, Illinois, commencing at 9:00 a.m. on July 17th, 2024.

Royal Reporting Services, Inc.
312.361.8851

Kathleen Koch v. Vantage Specialty Chemicals, Inc.; et al.
Proceedings had on 7/17/2024

Page 2

```
 1    APPEARANCES:

 2         REDGRAVE LLP
           MR. CHRISTOPHER Q. KING
 3         230 West Monroe Street
           Suite 210
 4         Chicago, Illinois 60606
           Phone:  312.800.1968
 5         E-mail:  cking@redgravellp.com

 6              Discovery Neutral

 7         STINAR GOULD GRIECO & HENSLEY
           MR. BRYCE T. HENSLEY
 8         101 North Wacker Drive
           Suite 100
 9         Chicago, Illinois 60606
           Phone:  312.728.7444
10         E-mail:  bryce@sgghlaw.com

11              On behalf of the Plaintiff;

12         KIRKLAND & ELLIS LLP
           MR. BRENTON A. ROGERS
13         MS. KATIE J. WELCH
           300 North LaSalle Street
14         Suite 4800
           Chicago, Illinois 60654
15         Phone:  312.862.2000
           E-mails: brenton.rogers@kirkland.com
16                  katie.welch@kirkland.com

17              and

18         ROPES & GRAY LLP
           MR. NICHOLAS M. BERG
19         MR. JEFFREY J. BUSHOFSKY
           191 North Wacker Drive
20         32nd Floor
           Chicago, Illinois 60606
21         Phone: 312.845.1200
           E:mails: nicholas.berg@ropesgray.com
22                  jeffrey.bushofsky@ropesgray.com

23              On behalf of the Defendant Vantage Specialty
                Chemicals, Inc.;
24
```

Kathleen Koch v. Vantage Specialty Chemicals, Inc.; et al.
Proceedings had on 7/17/2024

Page 3

```
 1   APPEARANCES (continued):
 2        JONES DAY
          MR. PHILIP M. OLISS
 3        MS. ERICA E. DUFF
          110 North Wacker Drive
 4        Suite 4800
          Chicago, Illinois 60606
 5        Phone:  312.782.3939
          E-mails: poliss@jonesday.com
 6                 eduff@jonesday.com
 7            On behalf of the Defendant STERIS Isomedix
              Services, Inc.;
 8
          PEDERSEN & HOUPT
 9        MR. ANTHONY DeMARCO PESCE
          MR. CHARLES M. GERING
10        161 North Clark Street
          Suite 2700
11        Chicago, Illinois 60601
          Phone:  312.641.6888
12        E-mails: apesce@pedersenhoupt.com
                   cgering@pedersenhoupt.com
13
              On behalf of the Defendant Cosmed Group, Inc.;
14
          K&L GATES LLP
15        MR. VINCENZO R. CHIMERA
          70 West Madison Street
16        Suite 3300
          Chicago, Illinois 60602
17        Phone:  312.372.1121
          E-mail:  vincenzo.chimera@klgates.com
18
              On behalf of PPG Industries, Inc.;
19
          DLA PIPER LLP
20        MR. JOSEPH A. ROSELIUS
          444 West Lake Street
21        Suite 900
          Chicago, Illinois 60606
22        Phone:  312.368.4000
          E-mail:  joseph.roselius@dlapiper.com
23
              On behalf of BASF.
24              *    *    *    *    *    *
```

Royal Reporting Services, Inc.
312.361.8851

Case: 1:24-cv-07261 Document #: 26-1 Filed: 08/29/24 Page 5 of 13 PageID #:340

Kathleen Koch v. Vantage Specialty Chemicals, Inc.; et al.
Proceedings had on 7/17/2024

Page 4

1   THE COURT: I've got several issues to start with
2   today. Why don't we start with -- Well, there was an
3   issue with the case management order as to the Koch
4   case.
5      MR. HENSLEY: Yeah. So, Your Honor, there was
6   previously a motion to amend the Koch case that -- You
7   entered an order on June 13th, and for whatever reason,
8   the image on the Clerk's website wasn't going through.
9   We've attempted to file that amended complaint. I'll
10  hand a copy to counsel for PPG. We tried to file it.
11  The Clerk's office bounced it back as not being -- They
12  haven't been able to read that order. So if the clerk
13  could just reupload it, I think that would be -- And
14  obviously, there's a date on there.
15     THE COURT: I was going to say, we can make -- Just
16  to make sure, I'm going to add to this that it's
17  nunc pro tunc to June 13th as well just so that it's
18  clear for the Clerk. So we'll get that entered and be
19  imaged. I don't know why it didn't catch that day, but
20  we'll get that taken care of.
21     MR. HENSLEY: The clerk may not have been here that
22  day.
23     THE COURT: He may not have been. I can't
24  remember.

Page 5

1      MR. HENSLEY: The other issue that -- I don't want
2   to take anything out of order, Your Honor. But last
3   week we had presented the Court -- Within this was a
4   schedule related to settlement, but they were motions
5   appointing the settlement neutral. And obviously, I
6   think everybody here can agree, we want to get this show
7   on the road. There were some, I'll call them, half
8   objections last week by some counsel here. We haven't
9   received a response objecting or opposing this in any
10  way. We would like to get those -- those orders entered
11  as to the allocation neutral, Ms. Yanni.
12     THE COURT: These are the orders that were provided
13  to appoint Cathy Yanni, Y-A-N-N-I, of JAMS as the
14  allocation neutral both in Medline and Vantage
15  settlements.
16     Are there any objections?
17     MR. OLISS: There are, Your Honor. These are the
18  two motions that were designated as unopposed even
19  though they were never shared with us before they were
20  filed. And we don't -- There's no basis to do it. So
21  what they're seeking is the Court's imprimatur on the
22  appointment of an administrator in a private settlement,
23  I assume for purposes of being able to say later, in
24  good faith determination, that you endorsed this process

Page 6

1   and this individual.
2      There's no basis in the law for doing it.
3   This is essentially asking you to make a judicial
4   appointment without any authority to do so. So we do
5   oppose it, and if we -- if you'd like to have us submit
6   a brief, we can do that, but we would ask that you just
7   deny the motions.
8      THE COURT: I mean, to that extent, if there's no
9   legal basis for it, then if I don't need to make an
10  order for it, it will go through anyway because it's
11  part of their settlement agreement.
12     MR. OLISS: Well, it would come up -- Well, I'm not
13  exactly sure I understood that.
14     THE COURT: If -- Regardless of whether I give it
15  any imprimatur or not, if it's a term within their
16  contract, I can't get involved. If you're saying I
17  can't get involved in their contract, then their
18  contract will stand on its own, and Ms. Yanni will be
19  appointed regardless of whether I say yes or no.
20     MR. OLISS: Exactly, Your Honor, but she won't be
21  appointed by an order of this Court, which will then be
22  used -- for which there is no authority, which will then
23  be used as, you know, the Court's imprimatur on the
24  allocations that are ultimately --

Page 7

1      THE COURT: Well, there's an authority for me to
2   appoint Redgrave.
3      MR. OLISS: Well, I think that's an open question
4   whether there's authority to appoint Redgrave, but
5   that's a different issue.
6      There's nothing in the motion that indicates
7   any basis for the Court to act on this, its imprimatur
8   on the appointment of this individual, and bearing in
9   mind that these are settlement agreements at least with
10  respect to Vantage that we have no visibility on. So
11  you're essentially being asked to endorse an allocation
12  process solely for the reason of them attempting to get
13  smooth sailing in good faith determinations in a process
14  that we can't see and where there is no authority to do
15  so.
16     THE COURT: Well, nothing can settle until I make a
17  good faith finding regardless, but that's subject to
18  something down the road. At this point, I can't get to
19  a good faith finding until I know what each specific
20  settlement is going to be; and if that has to go through
21  Ms. Yanni, it does. I don't think I'm making any --
22  There's nothing I'm -- I'm doing by having her appointed
23  as an allocation neutral that indicates this Court is
24  finding that any settlement is in good faith or not.

Case: 1:24-cv-07261 Document #: 26-1 Filed: 08/29/24 Page 6 of 13 PageID #:341

Kathleen Koch v. Vantage Specialty Chemicals, Inc.; et al.
Proceedings had on 7/17/2024

Page 8

1  It's simply that she's being ordered by the Court to
2  serve as an allocation neutral to come up with the best
3  number she can as possible. It's very possible I will
4  disagree with her and find that the settlements are not
5  in good faith.
6      MR. OLISS: Well, it's also quite possible,
7  Your Honor, that when this -- if and when these good
8  faith determination motions come up, we may not be in
9  this room. We may not be in front of you. They are
10 free -- We do not object to them selecting whoever they
11 want to select as an allocation neutral, but what we
12 object to is having the Court enter an order appointing
13 somebody. And if you look in the motion, it's, here are
14 all her qualifications; this is why she's great, that
15 they can then use to present this evidence that the
16 allocation was somehow approved in advance by the Court.
17 It's an advisory opinion. I think that maybe that's
18 just an analogy, but it's completely inappropriate to
19 have the Court endorse a settlement term in advance of
20 actually having a hearing and an opportunity to
21 challenge a good faith determination.
22      THE COURT: As I said, I don't think it makes
23 any -- If you're correct, then it makes no difference
24 whether I enter this or not, because, as I stated,

Page 9

1  whether she's an allocation neutral or not pursuant to a
2  Court order or simply pursuant to the terms of the
3  contract has no effect on whether that would find those
4  settlements to be in good faith or not.
5      So over objection, I'm going to have those
6  orders entered.
7      MR. HENSLEY: Thank you.
8      THE COURT: Those will be done.
9      There were issues, I guess, with regard to the
10 Knobbe case with regard to discovery, both written and
11 oral discovery. There's still an issue.
12      Mr. King?
13      MR. KING: Your Honor, there are still some open
14 issues for -- on the discovery disputes both with
15 respect to the corporate representative depositions and
16 with respect to document productions. Those are now
17 both submitted to us, and we will be issuing reports and
18 recommendations on those, so...
19      THE COURT: Because I think I did see
20 recommendations for a ten-hour -- ten-hour depositions
21 plus three hours for --
22      MR. KING: The individual depositions.
23      THE COURT: -- the individual deps --
24      MR. KING: Yes.

Page 10

1      THE COURT: -- of each of those people and then
2  their Topics 1, 6, and 38.
3      MR. KING: Yes. And then the remaining -- There
4  are disputes as to most of the remaining topics, Judge,
5  and we're hoping to issue a report and recommendation on
6  those by the end of this week.
7      THE COURT: Oh, good. Okay.
8      MR. KING: Yes. That's our goal. Those
9  depositions have been scheduled, is our understanding,
10 for next week and the following week. We commend the
11 parties for getting those scheduled within the deadline.
12     THE COURT: These are all the 206(a)(1)s?
13     MR. KING: Those are the corporate representative
14 206(a)(1) depositions, yes. I understand there are
15 individual depositions going on this week.
16     THE COURT: Apart from the 206(a)(1)s?
17     MR. HENSLEY: I think there were three that took
18 place yesterday, in fact.
19     THE COURT: Okay. So, basically, we should wait --
20 You're telling me we should wait until we get the report
21 and recommendation before we do anything else?
22     MR. KING: Well, I think that -- Before there's a
23 ruling, yes, from the Court, yes. We have -- One of our
24 recommendations to the parties is that they proceed with

Page 11

1  the 206(a)(1) depositions, they not wait to take them
2  until all of the discovery disputes have been resolved
3  because for most topics -- not all, but for most topics,
4  the defendants have agreed to put up witnesses, and the
5  question is, what is the scope of the topics for those
6  particular witnesses. That, it seems to me, will --
7  will either be resolved or narrowed during the course of
8  the depositions. And we can always come back and clean
9  them up, but we see no reason to delay that.
10     There's an order with regard to the
11 designation, the identification of expert witnesses
12 starting next -- beginning of next month. There was no
13 reason to delay. Let's push this thing ahead. What
14 we've seen with other corporate representative
15 depositions in this case is that even where there are
16 significant disagreements about scope, once they get in
17 the deposition, either the issues are resolved or they
18 narrow them such that they're much easier to resolve.
19 And we won't be making rulings on the scope of topics
20 in -- without appropriate context.
21     THE COURT: The sandbox gets smaller as you're
22 taking depositions.
23     MR. KING: The sandbox gets smaller, Your Honor.
24 That is correct.

Case: 1:24-cv-07261 Document #: 26-1 Filed: 08/29/24 Page 7 of 13 PageID #:342

Kathleen Koch v. Vantage Specialty Chemicals, Inc.; et al.
Proceedings had on 7/17/2024

Page 12

1  THE COURT: How many 206(a)(1)s are there right now
2  that are scheduled? Do we know?
3  MR. OLISS: So I think there are some 47 topics --
4  THE COURT: Topics, no. But 206(a)(1) deps, how
5  many persons do we have scheduled?
6  MR. OLISS: Well, that -- I think I can say two for
7  each: two for Cosmed, two for Isomedix. There is some
8  play in the joints because, depending on the scope and
9  what's -- you know, whether certain things fall away or
10 don't, that may change. And I think everybody's
11 expectation -- firm expectation is that we will get
12 these done in the next couple weeks, before the end of
13 fact discovery. There will be some schedule issues
14 because --
15 THE COURT: Still -- There always is, yeah.
16 MR. OLISS: -- people who are testifying in their
17 individual capacity are also -- But I think we're on
18 track to work this out.
19 THE COURT: Good, good, good.
20   Okay. And then the trailing cases.
21 MR. HENSLEY: So my understanding where things
22 stand is that -- I'll start with the deficiency letter.
23 They did send us a deficiency letter on the outstanding
24 issues on the plaintiff fact sheets. I believe that my

Page 13

1  co-counsel responded stating that they were going to get
2  a response to that back either yesterday -- I don't
3  think it happened yesterday -- or today. So I
4  anticipate that we'll be getting them a response on
5  those issues.
6  THE COURT: Was it by issue, or was it by
7  plaintiff? I mean, how many -- How was the deficiency
8  letter --
9  MR. HENSLEY: I think it was a global --
10 MR. OLISS: Yeah.
11 THE COURT: It was a global issue.
12 MR. HENSLEY: It was a global deficiency letter.
13 MR. OLISS: One other -- And we don't have to go
14 into the weeds on it. I'm sure you don't want to right
15 now.
16 THE COURT: No.
17 MR. OLISS: But I think there were some instances
18 where there appeared to be global nonresponses, so we
19 identified those where -- you know, in every one that
20 says, We'll supplement, things like that. So I think --
21 But I think it was organized around categories.
22 THE COURT: Okay.
23 MR. HENSLEY: And then as it relates to the case
24 management order, I know that's in front of Redgrave.

Page 14

1  We had responded back to defense counsel for some
2  clarifying questions as to their proposal. I think the
3  Court's recommendation was well taken about the number
4  of claimants -- or number of plaintiffs in each group,
5  that each side will select a certain number. I think
6  we're in agreement on that. There's just some
7  additional issues that we reached out to defense counsel
8  on that we're seeking clarity on, and then I believe
9  we're utilizing Redgrave to get that off the ground.
10 THE COURT: Okay.
11 MR. OLISS: Yeah, I'm not quite as hopeful. I
12 mean, we did get some -- an e-mail yesterday with some
13 clarifying questions that suggested that, again,
14 plaintiffs will not -- individually will not submit to
15 this process, only Edelson will. If they reserve -- So
16 we would pick 15; they would pick 15; and then they
17 would decide whether they agree to our 15. They'd also
18 reserve the right to add anybody they want to, who they
19 consider to be a preference candidate. They would also
20 limit the discovery that we're permitted to do to where
21 it's only marginally more than we can do anyway, and,
22 also, they want to know whether we have the consent of
23 all the defendants, which reaches into a larger issue
24 here which is we don't know who is suing whom for what

Page 15

1  in this case. We don't know who the defendants are in
2  the different cases. So we do have some, what I'm
3  concerned are, blocking issues to getting this done.
4  THE COURT: I want to -- It sounds like a lot of
5  that actually can be resolved and -- to that point.
6  Maybe we should move on to the next issue.
7  MR. KING: Your Honor, if I may just clarify one
8  point on that. It is not clear to me that we actually
9  have been engaged on the C- -- the dispute on the CMOs
10 because we heard nothing from the parties for about two
11 weeks. And then yesterday we -- Well, the day before we
12 received the CMO that was filed on July 3rd, and then
13 yesterday we received a communication from the
14 plaintiffs' side, but we have not had any conversations
15 with the defense side to understand whether they agree
16 that we are engaged or whether they are waiting to --
17 for the next round of negotiations. We're happy to help
18 them. We at Redgrave will just need some clarity on
19 that, Judge. Just wanted to clarify the record on that.
20 THE COURT: You all have each other's phone numbers
21 so --
22 MR. KING: Exactly, Judge.
23 THE COURT: -- make use of them.
24   I think one of the other issues that -- one of

Case: 1:24-cv-07261 Document #: 26-1 Filed: 08/29/24 Page 8 of 13 PageID #:343

Kathleen Koch v. Vantage Specialty Chemicals, Inc.; et al.
Proceedings had on 7/17/2024

Page 16

1  the blocking issues may be the one dealing with some of
2  the briefs I received in the past week, sort of the
3  issue of the new cases against PPG and BASF. And we
4  talked about this last time, and I had sort of wavered
5  in what I thought was the best resolution. I've done
6  some legal research in the meantime. I certainly don't
7  claim to be an expert in federal removal law by any
8  means, but I guess the initial question I have is
9  whether this is, in fact, a legal question or whether
10 it's really just a factual issue.
11      It's my understanding that plaintiff plans on
12 naming individual persons, either current or former
13 employees of BASF and PPG, as defendants in the case.
14      MR. HENSLEY: Correct.
15      THE COURT: Have any of those people been named
16 yet?
17      MR. HENSLEY: They were amended in a small handful
18 of cases. The Court entered an order. I'd have to go
19 back and look at the order for the date on that. But in
20 a small number of cases, you granted leave for us to
21 amend to add in -- it's Penman and one other individual
22 witness. So they have been added in those cases. We
23 have a motion to amend that we filed yesterday --
24 courtesy copies here -- that we intend -- it goes

Page 17

1  through kind of our plan in terms of amending to add
2  them in a large number of cases, and that's covered in
3  our brief here.
4       THE COURT: Is there a timeline for getting those
5  people into the case --
6       MR. HENSLEY: Our --
7       THE COURT: -- in the amended complaint?
8       MR. HENSLEY: Our plan would be that if the order
9  is entered today granting us leave to amend, that we
10 would be able to get our complaints on file within
11 14 days.
12      THE COURT: When is the one-year deadline for the
13 removal statute? When does it run with regard to BASF
14 and PPG?
15      MR. ROSELIUS: Your Honor, that's a very
16 complicated question.
17      THE COURT: And I don't -- And I don't know -- I'm
18 asking, in part, because I don't know what type of
19 jurisdiction we are, whether it's based upon the service
20 on the last defendant or service on the first defendant.
21      MR. ROSELIUS: It's a very complicated question,
22 Your Honor, in part, because the plaintiffs have filed
23 cases on many different dates and now have sought, as
24 you know, to bring in BASF and PPG into the shell of

Page 18

1  these old cases that have been pending for five or more
2  years -- or for four or more years. So, you know --
3       THE COURT: But the issue is, is if they name these
4  individuals that are Illinois residents, that destroys
5  diversity, so...
6       MR. ROSELIUS: I don't think that's true,
7  Your Honor, because there's still a question of improper
8  joinder. I know Mr. Hensley litigated this in
9  Sterigenics. We think that's a different issue, and we
10 would take it up with the federal court if those
11 individual defendants are added.
12      THE COURT: Well, then in that case -- My other
13 alternative is, why are the defendants waiting at
14 this -- why are they waiting? Why don't you go ahead
15 and file your removal petition at this point, see what
16 you don't -- you don't -- You can have more than one
17 removal petition. So if the first one fails, the
18 federal judge hopefully will tell you why he or she is
19 denying the petition. Because if there aren't enough
20 statements in the record -- I think there are -- there
21 have been, but this Court certainly considers Vantage
22 and Medline to be nominal defendants only and in name
23 only. They're solely here for purposes of the
24 settlements.

Page 19

1       I haven't made a finding if there's any
2  untoward conduct by the parties in trying to delay the
3  settlements. I don't think anybody wants that. But if
4  there is, we have not had -- haven't had that
5  evidentiary hearing, which there hasn't been. So I
6  don't see any untoward conduct.
7       And moreover, I guess I have a question with
8  regard to Cosmed and Isomedix. They're out-of-state
9  corporations, and they have been in this case -- or in
10 these cases all along. So if it's -- What difference
11 does it -- What I was looking for and what I didn't
12 find -- Let's put it this way. What I was looking for
13 and what I didn't find was any -- and I don't want to
14 use the word "duty," but any preference, I guess, that I
15 am supposed to make as a state court judge in teeing up
16 a case so that it could be removed to federal court.
17 It's not my responsibility to do that. Whether it's --
18 Whether that happens or not is simply the nature of the
19 case, but it's not my responsibility to make sure that a
20 party gets a federal forum versus a state forum. I
21 mean, that's not the purpose of --
22      MR. CHIMERA: If I may be heard --
23      THE COURT: -- of complete diversity of
24 jurisdiction.

Case: 1:24-cv-07261 Document #: 26-1 Filed: 08/29/24 Page 9 of 13 PageID #:344

Kathleen Koch v. Vantage Specialty Chemicals, Inc.; et al.
Proceedings had on 7/17/2024

Page 20

1    MR. CHIMERA: If I may be heard, though,
2  Your Honor, it is a prong for a request for leave to
3  amend prejudice. And, you know, this is what we have
4  been arguing all along, that Vantage -- us being put
5  into the shell of these older cases, these five-year-old
6  cases, you know, from PPG's perspective, with Vantage
7  still in it. We have heard different things about what
8  the status of the settlement process is with Vantage,
9  and I thought it was clear enough last week that it's an
10 ongoing process, that the earliest it's going to be
11 resolved, you know, is in January of next year. And
12 that has tremendous implications for the pursuit of
13 federal jurisdiction with it being an Illinois
14 corporation.
15    I think it's very much a separate issue as to
16 these individuals who -- Also, they have not been
17 granted leave to add in, you know, Penman and any of
18 these other individuals. I'm only aware of the Koch
19 case being the only single case. No order has been
20 granted leave permitting them to bring them in, to my
21 knowledge, these global cases.
22    THE COURT: Well, I guess, wouldn't it still be to
23 everyone's advantage for the plaintiffs to amend the
24 complaints they need to amend so we see which cases, in

Page 21

1  fact, they have added Illinois residents, which would
2  destroy complete diversity so those cases would remain
3  here? And then see which cases they haven't been named
4  in, in which case you could file a petition for removal
5  in those cases to federal court.
6    MR. CHIMERA: I think the only issue, Your Honor,
7  is, we oppose their motion, which, by the way, was filed
8  less than 12 hours before the hearing this morning, a
9  repeated practice of sand- -- you know, putting us in a
10 really bad position of not having proper notice of the
11 motions they're filing. But suffice to say, we just --
12 we object to their motion for leave to add these --
13   THE COURT: If you're objecting based on notice,
14 that's fine. I'll grant your objection, and we'll
15 consider this next week.
16    But I'm just letting you know where I'm going
17 with this. It seems to me to make sense to allow them
18 to put in whoever they're going to put in, in as many
19 cases as possible. If -- If you think there are issues
20 of improper joinder, that's an issue for the federal
21 court, not for me, which, again, only augers in favor of
22 the defendants filing a petition for removal at this
23 point rather than waiting.
24    MR. OLISS: Judge, I'd like to address the question

Page 22

1  you asked about Isomedix and Cosmed and actually filing
2  a petition for removal. Vantage is an in-state
3  defendant, right?
4    THE COURT: Correct.
5    MR. OLISS: And that settlement, you know, has been
6  recently announced. I'm not sure how to phrase it. You
7  have ordered plaintiffs to file amended complaints.
8  They have not filed amended complaints. We have been
9  waiting for them to file amended complaints. They first
10 moved, I think, in February to file amended
11 complaints -- these omnibus motions where they don't
12 specify which cases they are going to file in for PPG
13 and BASF.
14    They have now -- They were ordered to file
15 amended complaints today. Instead, we get last night a
16 motion that would completely turn this case upside down,
17 would do the opposite of what you've been asking us to
18 do the last several sessions, which is clean up the
19 pleadings, make this thing make sense. Instead, they
20 have had -- I'll give you an example. We have two cases
21 set for January. Under their motion, we would add seven
22 defendants in one and five in another. Okay? This is
23 just the opposite of the progress you've been asking for
24 and the opposite of what you ordered.

Page 23

1    So our hope and expectation, based on our
2  conversations with you in this room and with plaintiffs'
3  counsel, was that they were going to do what they were
4  instructed to do, just file the amended complaints that
5  do not include Medline and Vantage, in which case the
6  diversity question is plain. But they won't do that,
7  and time is ticking. And instead of doing that, they're
8  adding maintenance guys from -- or seeking to add
9  maintenance guys from facilities in order to destroy
10 jurisdiction.
11    THE COURT: But I've already -- I've made a
12 decision that I'm not going to -- any amended complaint
13 is not going to -- Or let's put it in the positive. Any
14 amended complaint will name Medline and Vantage in any
15 amended pleading because I'm not going to get rid of
16 them until a good faith finding is heard. So they're
17 not going away. I'm not dismissing them out now with
18 leave to refile in case -- if the settlements fail.
19    MR. OLISS: Okay.
20    THE COURT: So I assume in any amended complaint,
21 there is going to be notice of defendants, of Medline
22 and Vantage.
23    MR. OLISS: And, obviously, I respect your decision
24 on that. That's the conversation we were having last

Case: 1:24-cv-07261 Document #: 26-1 Filed: 08/29/24 Page 10 of 13 PageID #:345

Kathleen Koch v. Vantage Specialty Chemicals, Inc.; et al.
Proceedings had on 7/17/2024

Page 24

1  week, which began with you saying, I don't want to see
2  Medline and Vantage in this case. I mean, obviously --
3     THE COURT: And I've --
4     MR. OLISS: -- you're free to think it through.
5     THE COURT: And I've thought it through.
6     MR. OLISS: But that's the position we're in. So
7  we don't have operative complaints. It's very difficult
8  to remove in that instance.
9     THE COURT: But, again, then that sort of --
10 Doesn't it again beg the question, don't we need to get
11 amended complaints on file as quickly as possible so
12 that people can see who is in and who is out?
13    MR. HENSLEY: And I think to counsel's point, I
14 mean, we haven't had an order on the amended complaints.
15 We've been having this conversation now for weeks on
16 end, and all we're asking for is the order be entered so
17 that when we go to file these amended complaints,
18 they're not rejected by the Clerk. We need an order
19 explaining what we can and cannot add, and I think it
20 inures to everybody's benefit to have those on file as
21 soon as possible so that if there are issues --
22    THE COURT: And let me just say, even if I grant
23 them leave to file an amended complaint, it doesn't deny
24 defendants any objections. It doesn't stop them from

Page 25

1  objecting or filing motions to dismiss.
2     And I will say this right now. If you're
3  adding five to seven people in cases that are scheduled
4  to go to trial in January, I won't have that. That's
5  not happening.
6     MR. CHIMERA: This is why we object, Your Honor.
7  And, again, we just received this last night, this
8  proposal.
9     THE COURT: But, again, isn't that the kind of
10 thing you can make in a motion to me once we see what
11 the amended complaints look like? I think you've got to
12 take it one step at a time. See what the amended
13 complaints are like. Then you can come in on a motion
14 to say, They have added five people for a trial in
15 January. They have never been -- I mean, we have no
16 discovery done on any of these people. There's
17 certainly no way to get discovery done on five new
18 defendants between now and January.
19    MR. ROSELIUS: And, yet, we run into problems with
20 the one-year rule, Your Honor, referenced when they're
21 adding BASF and PPG five years after a complaint is
22 filed into the shell of an old complaint.
23    MR. HENSLEY: But they haven't been added yet, so
24 this one -- this whole thing about the one year, they

Page 26

1  haven't been added in a case. They just admitted that
2  one year has not started running on those cases.
3     THE COURT: But, again, that only tells me to file
4  your petition for removal now. Don't wait. See what
5  the federal court says. Don't wait for them to file an
6  amended complaint. Take advantage of your right under
7  the federal rules and file a petition notice -- or
8  petition for removal.
9     MR. ROSELIUS: And, Your Honor, just to be clear,
10 on the settlement issues, we've heard many different
11 things. The first time we found out that there was a
12 binding settlement agreement between the plaintiffs and
13 Vantage and Medline -- or in Vantage, at least, was
14 July 2nd. So, you know, I don't want to suggest that we
15 have somehow known how this was going and how this was
16 going to play out. There's been continued obfuscation
17 for the last two months.
18    THE COURT: Well, I don't know -- I mean, I don't
19 know the nature of the settlement negotiations, so I
20 can't comment on that at all.
21    MR. CHIMERA: Your Honor, I do return to my
22 suggestion that I've had for the last several weeks.
23 They can file a brand-new lawsuit against PPG and BASF.
24 We're brand new to the case. They want to file a new

Page 27

1  lawsuit? That's fine. They don't even need leave to do
2  that, to file a brand-new lawsuit. But to shoehorn us
3  into those older cases, there are tremendous
4  implications for removal given, you know, Vantage being
5  an older company, as counsel for BASF has said too. You
6  know, this misjoinder issue is another potential issue.
7  You know, they certainly haven't been granted leave to
8  name these individual defendants in the amended
9  complaints yet.
10    But to cut to the chase, I just think
11 brand-new complaints is the cleanest way to go about it.
12 Let the process for the Vantage settlement play out.
13 They can file new complaints against the new defendants
14 who are brand new to the litigation.
15    THE COURT: Again -- And I appreciate that, but I
16 don't think that's the way to go.
17    Moreover, I -- One of the problems I had in
18 thinking about this over the last couple of weeks was
19 judicial economy and the fact that in naming an
20 amended -- having an amended complaint bringing in BASF
21 and PPG also then does affect the remaining active
22 defendants, Isomedix and Cosmed, to the extent that
23 there is -- there could be issues of comparative
24 negligence. I don't know. But to have an issue

Case: 1:24-cv-07261 Document #: 26-1 Filed: 08/29/24 Page 11 of 13 PageID #:346

Kathleen Koch v. Vantage Specialty Chemicals, Inc.; et al.
Proceedings had on 7/17/2024

Page 28

1  addressed in separate litigation in state and federal
2  court, I can tell you that any judges won't be as bald
3  as I am from having to deal with those sorts of issues.
4       It's not good to have multiple jurisdictions
5  hearing the same issues arising out of the same set of
6  facts.  And for that reason, there's also -- There is
7  nothing in the rules or in the statute that prohibits an
8  amended complaint being -- bringing in new defendants.
9  I realize you have -- you have defenses, and they may be
10 very good defenses in terms of statute of limitations or
11 statutes of repose, but that's all down the road, again.
12 And, again, none of that denies you the opportunity to
13 file a petition for a removal at this point or to file
14 notice of removal once you see what the amended
15 complaints look like.  I think the first step is to see
16 what the amended complaints look like.
17      MR. OLISS:  Your Honor, respectfully, the first
18 step is for them to meet their burden, which they
19 acknowledge they have, in order to get leave to amend
20 these complaints, and it's not simply that leave is
21 freely granted.  They're claiming that these complaints
22 relate back, in the case of Isomedix and Cosmed, to
23 complaints that were filed years and years ago.  They
24 acknowledge that they must demonstrate that these

Page 29

1  individuals are being added and corporate entities are
2  being added, should have known that there was a mistake
3  in not adding them earlier.  That is a preposterous
4  proposition but, at the very least, unsupported in their
5  briefing.
6       There are legal issues that need to be
7  addressed, and there is a burden that needs to be met
8  before they can be given leave to turn over the table in
9  this case and add a bunch of defendants purely for
10 tactical reasons and to defeat our jurisdictional
11 rights.
12      THE COURT:  Those are all --
13      MR. OLISS:  That's the one step at a time I would
14 suggest --
15      THE COURT:  Those are all excellent arguments once
16 a motion is filed to dismiss the amended complaint.
17 It's --
18      MR. OLISS:  That's the standard for leave to
19 obtain -- or to obtain leave to amend.
20      MR. HENSLEY:  The standard --
21      THE COURT:  Leave to amend is to be freely granted,
22 and if the -- And I will give you -- I've looked over
23 some of the complaints.  I think there are some
24 sufficiency problems in the way they're pleaded, and I

Page 30

1  will be reading them strictly.  If I believe that -- Let
2  me say this:  And we all know, statute of limitations,
3  statute of repose are legal questions, but they're based
4  upon the facts, and they are ultimately factual
5  questions for a motion for summary judgment.  But at the
6  same time, I'm going to be reading the complaints, and
7  if I see that there -- it's hazy in terms of when was
8  the first diagnosis or when a person lived where for
9  what periods of time, and all of that is unclear, I'll
10 be dismissing those complaints out.  I mean, I'm not
11 going to have these hanging around, but that's on an
12 individual, case-by-case basis.
13      MR. HENSLEY:  And that's exactly what the Appellate
14 Court --
15      MR. OLISS:  In that instance, they will have not
16 met their burden for leave, as they have laid out in
17 their own motions, and they will have defeated most
18 likely the jurisdiction -- the diversity jurisdiction
19 because -- unless that's all going to happen in the next
20 30 days.  And I will tell you the other thing, Judge --
21 And I know --
22      THE COURT:  But you're going to --
23      MR. OLISS:  -- I'm a little frustrated --
24      THE COURT:  -- you're going to lose diversity

Page 31

1  jurisdiction anyway if they're going to name individual
2  defendants.  You've lost diversity jurisdiction
3  automatically.
4       MR. OLISS:  Well, that's not necessarily true.
5       But let me tell you what happens here.  They
6  file motions to amend.  They refuse to actually attach
7  what the amendments are going to be for individual
8  defendants or to clearly identify who is in, who is out.
9  Then while they're pending, they have the plaintiffs
10 whose cases they want to go forward withdraw from the
11 motion to amend so that they can get a trial date, or
12 they file an amendment that's different than what they
13 got leave to file and they add new defendants.  And it's
14 a constant shell game of defendants in, defendants out.
15      And I have zero confidence, nor should you,
16 Your Honor, that if you grant this motion for leave to
17 amend, that we'll actually see those amendment
18 complaints or, if we do, they will look anything like
19 what's being asked for.
20      MR. CHIMERA:  I just want to reiterate our
21 objection based on those -- We received this less than
22 12 hours before the hearing.  We would like an
23 opportunity to respond in writing.  I think more
24 briefing is needed on this issue of leave to amend and

Case: 1:24-cv-07261 Document #: 26-1 Filed: 08/29/24 Page 12 of 13 PageID #:347

Kathleen Koch v. Vantage Specialty Chemicals, Inc.; et al.
Proceedings had on 7/17/2024

Page 32

1  the standard and how freely it's given in different
2  contexts. I don't see this as conforming pleadings to
3  proofs or trying to update based on something learned in
4  discovery. I think this is a bridge too far, and we
5  object based on notice. We would like an opportunity to
6  respond in writing to what was filed untimely.
7      THE COURT: You can file something by next Tuesday
8  because we'll be meeting -- Or wait a minute. Can I do
9  next Wednesday? No, I can't do Wednesday next week.
10 We'll have to do Thursday of next week, assuming I'm
11 still alive by then.
12     So if you want to file something, file it by
13 Tuesday.
14     MR. OLISS: I'm sorry, Your Honor. You're saying
15 Wednesday the 24th?
16     THE COURT: I'm sorry, no. Thursday the 25th at
17 8:30.
18     MR. HENSLEY: I do have a courtesy copy of the
19 brief that was filed yesterday if you'd like it,
20 Your Honor.
21     THE COURT: If the motion doesn't -- Does the
22 motion attached amend the amended pleadings?
23     MR. HENSLEY: It does, and the proposed civil cover
24 sheet that we would recommend be filed with each

Page 33

1  complaint as well, identifying settling defendants,
2  non-settling defendants.
3      MR. CHIMERA: I disagree with that, but we'll lay
4  it out in the briefing, Your Honor.
5      THE COURT: But this is what you all -- what was
6  received by all the defendants?
7      MR. HENSLEY: Correct.
8      THE COURT: Okay. At some point, folks, this case
9  has to move forward. You're doing an amazing job of
10 preventing me from moving this case along, and I'm
11 getting more and more frustrated by it. But we'll see
12 what happens next Thursday at 8:30.
13     Like I said, if you've got anything to file,
14 file it by Tuesday. Put it in my box, please, outside.
15 Okay?
16     MR. HENSLEY: Understood.
17     MR. OLISS: Thank you, Your Honor.
18     THE COURT: See you then.
19        (Which were all the proceedings had
20         in the above-entitled cause on this
21         date.)
22
23
24

Case: 1:24-cv-07261 Document #: 26-1 Filed: 08/29/24 Page 13 of 13 PageID #:348

Kathleen Koch v. Vantage Specialty Chemicals, Inc.; et al.
Proceedings had on 7/17/2024

Page 34

```
 1    STATE OF ILLINOIS      )
                             )  SS.
 2    COUNTY OF COOK         )

 3

 4              Enza Tenerelli, being first duly sworn, on

 5    oath says that she is a Certified Shorthand Reporter and

 6    Registered Professional Reporter, doing business in the

 7    City of Chicago, County of Cook, and the State of

 8    Illinois;

 9              That she reported in shorthand the proceedings

10    had at the foregoing hearing;

11              And that the foregoing is a true and correct

12    transcript of her shorthand notes so taken as aforesaid

13    and contains all the proceedings had at the said

14    hearing.

15

16
                              _____
17                            ENZA TENERELLI, CSR, RPR
18                            161 North Clark Street
                              Suite 3050
19                            Chicago, Illinois 60601
                              Phone:  312.361.8851
20
      CSR No. 084-004873
21

22

23

24
```